2001 SD 44

**In the Matter of the ESTATE OF Ralph F. ROSENBAUM, Deceased.**

**No. 21420.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 27, 2000.

Decided April 11, 2001.

Robert A. Christenson, Sioux Falls, SD, Attorney for appellees Glenn and Delories Rosenbaum.

Steven R. Jensen of Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett, Storm & Jensen Sr., Sioux City, Iowa, Attorneys for appellants Elaine Trudeau, Bonnie Pojunos, Ron Rosenbaum, Rhonda Chartier, Estellene Dunn, and Estate of Ralph F. Rosenbaum.

KONENKAMP, Justice

[¶ 1.] In this appeal, we consider the effect of an agreement to convey property and then reconvey it following a quiet title action on the ownership in riverside land accreted to that property. We conclude that the accreted property was effectively severed following the quiet title action; consequently, when the reconveyance occurred the accreted land was not included. We reverse the circuit court's opposite conclusion.

### A.

[¶ 2.] Glen Rosenbaum and his wife, Delories, owned an undivided one-half interest in Lots 2A and 3A.[1] Glen's father, Ralph Rosenbaum, owned the other one-half interest. Ralph alone owned several other contiguous lots. All abutted the Missouri River. Over several decades, land accreted to these lots as a result of stabilization work performed by the Corps of Engineers. Ralph, Glen, and Ronald, another son, were indebted to Valley Bank of Elk Point, South Dakota. The bank held three notes. Ralph was named as the principal debtor on one note and as a guarantor on two, one jointly with Glen and the other with Ronald. The bank was considering foreclosure, so Ralph, Glen, and Ronald negotiated an agreement with the bank to reduce the debt.

[¶ 3.] Their agreement included a plan to quiet title to accretion ground and to sell that property, applying the proceeds to the Valley Bank debt.[2] To facilitate the quiet

---

1. For convenience, reference to Glen as owner also includes his wife. The legal description is

    Lot 2A of Section 30 and Lot 3A of Section 29 all in Township 90 North, Range 49,

    West of the 5th PM, Union County, South Dakota (Lots 2A and 3A).

2. The ownership interests are symbolized in the figure below. Of the several adjacent upland lots all abutting accreted land, Glen

title action, Glen agreed to convey his half interest in Lots 2A and 3A to his father. Glen knew that in deeding this property he was also transferring any accretion rights associated with ownership. On September 20, 1991, Glen and Delories, by quitclaim deed, conveyed their interest to Ralph. The deed described the property to be conveyed as:

An undivided one-half interest in Lot 2A of Section 30, Township 90 North, Range 49, West of the 5th P.M. Union County, South Dakota,

and

An undivided one-half interest in Lot 3A of Section 29, Township 90 North, Range 49, West of the 5th P.M. Union County, South Dakota.

At this meeting, Ralph signed an identical deed conveying the property back to Glen. This deed was placed in escrow with the understanding that delivery would occur upon completion of the quiet title action.

[¶ 4.] The same law firm that prepared the deeds also represented Ralph in a quiet title action in federal district court. In his complaint, Ralph asked the court to declare him the sole owner of the accretion land. The land was described in the complaint as

Lots One (1) and Two (2) of Rosenbaum Tract 2 as recorded in the Union County, South Dakota Register of Deeds Office in Book 12 of Plats on Page 1.

In December 1993, the court granted summary judgment and declared Ralph the sole owner of the accretion land, describing the parcel in the manner set forth above.

[¶ 5.] Ralph Rosenbaum died on February 13, 1994, two months after the final order quieting title. His will appointed his son, Glen, to serve as executor. At the time of Ralph's death, the property now described as Rosenbaum Tract Two had not been sold as contemplated in the agreement with Valley Bank. In his will, Ralph left the balance of his estate, including Rosenbaum Tract Two, to his children in equal shares.[3] With this disposition being contrary to Glen's understanding that he and his wife held a partial interest in the accretion land by deed, they filed a claim against the estate, requesting that the court decide the extent of their interest. The remaining beneficiaries contested Glen's claim. After a trial, the circuit

and his wife held two lots as tenants in common with Ralph: Lots 2A and 3A. Ralph alone owned all the remaining lots abutting the accretion land.

| 2A ½ | | 3A ½ | | | | |
|---|---|---|---|---|---|---|
| Rosenbaum Tract Two (Accretion Land) | | | | | | |

---

3. One child was excepted from this bequest.

court ruled that Glen and Delories were entitled to a one-half interest in the accretion property (Rosenbaum Tract Two), reasoning that a one-half interest in that property was implicitly included in the deed reconveying Lots 2A and 3A to Glen. This appeal followed.

**B.**

[¶ 6.] The beneficiaries contend the circuit court erred when it ruled that the deed reconveying Lots 2A and 3A to Glen included a one-half interest in the accreted property. Glen, on the other hand, believes the common law rules of accretion support his argument that the deed, executed by his father and left in escrow, included an interest in the accretion ground. We interpret a deed as we would a contract. SDCL 43–4–13. Contract interpretation is a question of law. *See Harksen v. Peska*, 1998 SD 70, ¶ 11, 581 N.W.2d 170, 173 (citing *Spring Brook Acres Water Users Ass'n, Inc. v. George*, 505 N.W.2d 778, 780 (S.D.1993)) (further citations omitted). Whether a contract is ambiguous is also a question of law subject to de novo review. *Id.* (Citations omitted).

[¶ 7.] When examining an instrument of conveyance, we are guided by the principle that the intention of the parties, and the grantor's intention in particular, must be ascertained by a fair consideration of the entire instrument and its language, without undue emphasis on any particular provision. *Peterson v. Beck*, 537 N.W.2d 375, 377 (S.D.1995)(citing *Northwest Realty Co. v. Jacobs*, 273 N.W.2d 141, 144 (S.D.1978)). Only when construction of an instrument, as a whole, leaves doubt about the intention of the parties will we consider the circumstances surrounding the execution of a deed. *Peterson*, 537 N.W.2d at 377 (citations omitted).

[¶ 8.] We presume that a grant of real property conveys a fee simple interest in the property described unless it appears from the grant that a lesser estate was intended. *Meyerink v. Northwestern Pub-*

*lic Service Co.*, 391 N.W.2d 180, 182 (S.D.1986)(citing SDCL 43–25–15)(further citations omitted). The deed executed by Ralph in favor of Glenn described the land to be conveyed as

> An undivided one-half interest in Lot 2A of Section 30, Township 90 North, Range 49, West of the 5th P.M. Union County, South Dakota,

and

> An undivided one-half interest in Lot 3A of Section 29, Township 90 North, Range 49, West of the 5th P.M. Union County, South Dakota.

Nothing in the language suggests a conveyance of anything less than a fee simple interest. The question remains, however, whether accretion rights, inherent in the deed from Glen to his father, were included in the reconveyance.

[¶ 9.] When land forms on the edge of a river, either by accumulation of material or recession of water, the land so formed belongs to the owner of the banks. *See* SDCL 43–17–5. Since an accretion becomes part of the upland to which it attaches, the law presumes that the conveyance of uplands includes accretions. *North Shore, Inc. v. Wakefield*, 530 N.W.2d 297, 302 (N.D.1995). *See also Deering v. Gahm*, 248 Iowa 1100, 84 N.W.2d 223, 225 (1957)(string citation omitted). This presumption comports with SDCL 43–25–15, which provides that a conveyance of land is a grant in fee simple with all accompanying rights. A presumption, of course, can be overcome. *See North Shore Inc.*, 530 N.W.2d at 302 (discussing *Jennings v. Shipp*, 115 N.W.2d 12 (N.D.1962); *Lynch v. Kupfer*, 134 Cal.App. 652, 26 P.2d 33 (1933)); *see also Deering*, 84 N.W.2d at 225; *Bryant v. Chicago Mill & Lumber Co.*, 216 F.2d 727, 731 (8th Cir.1954).

[¶ 10.] The presumption that accretions are included in a conveyance of uplands is subject to "an important qualification." *Bryant*, 216 F.2d at 731. The presumption is rebutted when there is a severance of the accretion ground from the original land. *Id.* Once severance occurs,

"transactions involving the original land do not affect the accretions." *Id. See also* 9 Powell on Real Property, § 66.04[6] at 66–43. Severance is determined by the grantor's intent. *Deering,* 84 N.W.2d at 225. Severance occurs, for example, when a grantor conveys accretion ground separate from the upland parcel. *See Bryant,* 216 F.2d at 732. *Cf. Haynes v. Carbonell,* 532 So.2d 746, 748 (Fla.Dist.Ct.App.1988) (finding that severance of accretion ground cannot be inferred simply because the deed is silent on riparian rights). Where the record title to property shows a prior judgment separating the uplands from the accretions, the presumption is successfully rebutted. *North Shore Inc.,* 530 N.W.2d at 302 (discussing *Lynch v. Kupfer,* 26 P.2d at 35). We conclude that Ralph's action in seeking and obtaining separate title to the accretion property evinces a clear intent to sever it from Lots 2A and 3A and the other contiguous lots that Ralph held alone.

[¶ 11.] The federal district court order quieting title in favor of Ralph supports this interpretation. In its order, the district court recognized the discrete character of the accretion ground by using a separate legal description. The ground is not described as property abutting other parcels owned by Ralph. Instead it is described as:

> Lots One(1) and Two(2) of Rosenbaum Tract Two (2), as recorded in the Union County, South Dakota Register of Deeds Office in book 12 of Plats on Page One(1).

It was only after this order that the deed reconveying Lots 2A and 3A took effect. A deed in escrow is not delivered until the performance of all conditions. *See* SDCL 43–4–11. It is undisputed that the escrow agent was not to deliver the deed to Glen until title was quieted in Ralph's name. Once that condition had occurred, the accretion property had a wholly separate legal description and was effectively sev-

ered from Lots 2A and 3A and the other contiguous lots. Consequently, we conclude that the circuit court erred in ruling that the deed from Ralph to Glen contained a one-half interest in the accretion property.[4]

## C.

[¶ 12.] As an alternative argument, Glen claims that he and his father made a binding oral agreement that he would "get all his rights back." In Glen's opinion, this included accretion rights inherent in the deed he executed in favor of his father. The remaining beneficiaries argue that any evidence of an oral agreement is prohibited by SDCL 53–8–5: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all of the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Thus, the beneficiaries claim that any oral agreement merged in the deeds executed in September of 1991.

[¶ 13.] On the delivery and acceptance of an unambiguous deed, all prior negotiations and agreements are merged into the deed. *Lunstra v. Century 21 GKR–Lammers Realtors,* 442 N.W.2d 448, 450 (S.D.1989) (citations omitted); *see also Auto–Owners Insurance Co. v. Hansen Housing, Inc.,* 2000 SD 13, ¶ 13, 604 N.W.2d 504, 509. An instrument is ambiguous when there is a real uncertainty about which meaning is correct. *Harksen,* 1998 SD 70, ¶ 15, 581 N.W.2d at 173 (citations omitted). Absent fraud, mistake, or accident, we presume that an unambiguous instrument expresses the intention of the parties. *Northwestern Public Service Co. v. Chicago & North Western Railway Co.,* 87 S.D. 480, 210 N.W.2d 158, 160, (1973).

[¶ 14.] Ralph's deed to Glen and his wife clearly and unambiguously describes Lots 2A and 3A as the property to be conveyed. The deed cannot be de-

---

4. Although it is not dispositive to our decision, we fail to see how the circuit court calculated that Glen and Delories were entitled to a one-half interest in Rosenbaum Tract Two. They only had a half-interest in two of several lots abutting the accretion land. Ralph owned the other lots outright.

clared ambiguous simply because the remaining beneficiaries and Glen do not agree on its proper construction. *See Harksen,* 1998 SD 70, ¶ 15, 581 N.W.2d at 173. Glen does not assert any fraud, mistake, or accident in the execution of the deed. He simply argues that conveyance of Lots 2A and 3A also includes an interest in Rosenbaum Tract Two (formerly the accretion property). Evidence of prior or contemporaneous negotiations or oral agreements are inadmissible for this purpose. *See Northwestern Public Service Co.,* 210 N.W.2d at 160 (explaining parol evidence is inadmissible when it would vary or add to a contract). Any previous oral agreement was merged into the unambiguous deed executed by Ralph.[5]

[¶ 15.] Reversed.

[¶ 16.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

---

5. Because we conclude that Ralph's deed to Glen did not carry with it the accretion land, we need not address other issues the parties raise.